IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

PRESTON BLAKE,

Plaintiff,                                         Civ. No. 17-807 JAP

v.

LEA COUNTY CORRECTIONAL
FACILITY; GEO GROUP, INC.; R.
SMITH, in his professional and personal
capacities; J. BEAIRD, in his professional
and personal capacities; L. RIVAS, in his
professional and personal capacities; FNU
PUENTE, in his professional and personal
capacities,

Defendants.

## MEMORANDUM OPINION AND ORDER
## FOR MARTINEZ REPORT

On August 8, 2017, Plaintiff Preston Blake, a New Mexico inmate proceeding pro se, filed a 42 U.S.C. § 1983 Complaint against various defendants associated with Lea County Correctional Facility. *See* PRISONER'S CIVIL RIGHTS COMPLAINT ("Complaint") (Doc. 1). In Count I, Plaintiff alleged due process violations arising from a prison disciplinary hearing and appeal. *Id.* at 2–3. In Count II, Plaintiff alleged First, Fifth, and Fourteenth Amendment violations stemming from the purported confiscation and destruction of his property, including legal documents. *Id.* at 3. Finally, in Count III, Plaintiff claimed that certain defendants interfered with his access to the courts by prohibiting him from accessing the prison law library. *Id.* at 4. The Court *sua sponte* dismissed Plaintiff's claims against defendants Lea County Correctional Facility and Geo Group Inc. *See* October 18, 2019, MEMORANDUM OPINION AND ORDER (Doc. 12).

The Court also *sua sponte* dismissed Count I, Count II insofar as Plaintiff alleged due process, equal protection, and conspiracy claims, and Count III. *Id.* All those claims were dismissed without prejudice. *Id.* The Court further informed Plaintiff that he may file an amended complaint to remedy the deficiencies in his Complaint, consistent with the Court's October 18, 2019, Memorandum Opinion and Order. *Id.* On January 17, 2020, following several motions for extension of time to file an amended complaint (*see* Docs. 14, 17), Plaintiff filed his Amended Complaint. *See* AMENDED COMPLAINT ("Amended Complaint" or "FAC") (Doc. 19).[1]

In the Amended Complaint, Plaintiff attempts to remedy the defects the Court observed in his Complaint. He also asserts claims not originally brought in his Complaint. The Court will *sua sponte* dismiss Plaintiff's double jeopardy claim, his due process claim against Defendants Beaird, Smith, and Rivas, and his equal protection claim as detailed herein. Additionally, the Court will order Defendants to investigate and respond to Plaintiff's surviving claims.

## Background

On August 1, 2016, Plaintiff received a visitor at Lea County Correctional Facility. Compl.[2] at 13. Correctional officers, suspicious that the visitor may be attempting to smuggle contraband into the prison, interviewed the visitor. *Id.* During the interview, the visitor confessed to carrying contraband on her person. *Id.* Following a search, correctional officers discovered that the visitor carried thirteen strips of suboxone and 2.32 grams of methamphetamine into the prison. *Id.* Subsequently, correctional officers filed an inmate misconduct report charging Plaintiff with dealing in dangerous drugs. *Id.* Plaintiff asserts that on the same day correctional officer Defendant

---

[1] Plaintiff's Amended Complaint is timely under the Court's January 16, 2020, Order granting Plaintiff additional time to file an amended complaint. *See* January 16, 2020, ORDER (Doc. 18).
[2] This recitation of facts is based on allegations provided in Plaintiff's original complaint and his Amended Complaint.

Puente confiscated Plaintiff's personal property, including a television, headphones, game console, clothes, supplies, and documents. *Id.* at 3.

On August 9, 2016, Plaintiff was the subject of a disciplinary hearing on the charge of dealing in dangerous drugs. *Id.* at 19. Defendant Rivas ultimately found Plaintiff guilty of dealing in dangerous drugs. *Id.* As sanctions, Defendant Rivas recommended thirty days of disciplinary segregation and 365 days of visitation, commissary, and phone suspension. *Id.*

Plaintiff filed an appeal of Defendant Rivas's disciplinary determination. Defendant Smith, Lea County Correctional Facility warden, denied Plaintiff's appeal on all four grounds. *Id.*

Following thirty days in disciplinary segregation, on August 1, 2016, Plaintiff received two trash bags containing the documents Defendant Puente previously confiscated. *Id.* at 8. The documents included legal papers such as an alleged statement from an alibi witness and a petition for writ of habeas corpus. *Id.* at 3. Those documents, however, were "torn and trashed." *Id.* According to Plaintiff, Defendant Puente acted with a retaliatory motive because Plaintiff had filed grievances against Defendant Puente in the past. *Id.* at 8. Plaintiff also claims that Defendant Beaird, warden secretary, saw the trashed documents after correctional officers returned them to Plaintiff. *Id.* at 8–9. According to Plaintiff, Defendant Beaird later returned to Plaintiff's cell and confiscated the documents in an alleged attempt to conceal Defendant Puente's actions. *Id.* at 9.

Plaintiff also alleges that following the disciplinary proceeding, he was informed that an additional hearing would be held to determine whether he would be sent to a "drug suppression program." FAC at 1. Plaintiff alleges he was told that at the additional hearing, he could voice his concerns about his safety because the drug suppression program would move Plaintiff from

protective custody to general population. *Id.* at 1–2. Plaintiff claims he was never given that hearing. *Id.* at 2.

Plaintiff has since been transferred to a different correctional facility. *See* Compl. at 4. He alleges that since his transfer he has been the victim of two assaults. FAC at 2. He believes that these assaults are due to the drug suppression program, which changed his classification from protective custody to general population. *Id.* In general population, Plaintiff avers that he has been targeted by his "known enemies" because of his former status as a protective custody inmate. *Id.* The first assault allegedly occurred on October 4, 2017, at Santa Rosa. *Id.*[3] There, he was approached by another inmate who asked about his protective custody status. *Id.* The inmate then proceeded to punch Plaintiff repeatedly until Plaintiff lost consciousness. *Id.* The second assault occurred on September 4, 2018, after Plaintiff was transferred to Southern New Mexico Correctional Facility. *Id.* at 2. Plaintiff claims he was in line at the "chow hall" when he was repeatedly punched in the face for three-to-five minutes. *Id.* at 2–3.

On August 8, 2017, Plaintiff filed a complaint in federal district court asserting that Defendants violated his civil rights under 42 U.S.C. § 1983. *Id.* at 2. The Court *sua sponte* dismissed multiple claims and granted Plaintiff leave to file the Amended Complaint currently before the Court. *See* Mem. Op. and Order at 13–14.[4] In his Amended Complaint, Plaintiff alleges that: (1) the Board of County Commissioners of Lea County and Geo Group Inc. maintain an unconstitutional policy that transfers protective custody inmates to general population;

---

[3] The Court believes that Plaintiff is referring to the Guadalupe County Correctional Facility, which is located in Santa Rosa, New Mexico. *See* New Mexico Corrections Department Prison Facilities, available at https://cd.nm.gov/nmcd-prison-facilities/ (last accessed March 31, 2020).
[4] Certain claims Plaintiff asserts in his Amended Complaint are based on events that occurred after the filing of his Complaint.

(2) Defendants Beaird and Smith were deliberately indifferent to his safety in violation of the Eighth Amendment; (3) unspecified defendants violated his Fifth Amendment right to be free from double jeopardy; (4) Defendant Puente violated his First and Fourteenth Amendment rights to access the courts and retaliated against him for exercising his First Amendment rights; (5) Defendant Beaird retaliated against him for exercising his First Amendment rights; (6) Defendant Puente violated his due process rights by destroying his legal documents; and (6) Defendants Beaird, Smith, and Rivas violated his due process and equal protection rights to remain in protective custody. FAC at 1–8.

## Legal Standard

The Court has the discretion to dismiss an in forma pauperis complaint *sua sponte* under 28 U.S.C. § 1915(e)(2) "at any time if . . . the action . . . is frivolous or malicious; [or] fails to state a claim on which relief may be granted." The Court also may dismiss a complaint *sua sponte* under Federal Rule of Civil Procedure ("Rule") 12(b)(6) for failure to state a claim if "it is 'patently obvious' that the plaintiff could not prevail on the facts alleged, and allowing him an opportunity to amend his complaint would be futile." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (quoting *McKinney v. Oklahoma, Dep't of Human Services*, 925 F.2d 363, 365 (10th Cir. 1991)). A plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "[A] court must accept as true all of the allegations contained in a complaint," and those factual allegations must "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). In reviewing Plaintiff's pro se complaint, the Court liberally construes the allegations. *See Garrett v. Selby Connor Maddux &*

*Janer*, 425 F.3d 836, 840 (10th Cir. 2005). The Court will not, however, "assume the role of the advocate for the pro se litigant." *Hall*, 935 F.2d at 1110.

**Discussion**

1.  Board of County Commissioners of Lea County and Geo Group Inc.

"A cause of action under section 1983 requires the deprivation of a civil right by a 'person' acting under color of state law." *McLaughlin v. Bd. of Trustees*, 215 F.3d 1168, 1172 (10th Cir. 2000). The plaintiff must allege that each government official, through the official's own individual actions, has personally violated the Constitution. *See Trask v. Franco*, 446 F.3d 1036, 1046 (10th Cir. 1998). "[A] detention facility is not a person or legally created entity capable of being sued." *White v. Utah*, 5 F. App'x 852, 853 (10th Cir. 2001).

In his Complaint, Plaintiff asserted claims against Lea County Correctional Facility and Geo Group Inc. Compl. at 1. The Court dismissed both of these defendants in its October 18, 2019 Memorandum Opinion and Order. *See* Mem. Op. and Order at 5 (dismissing LCCF because it is a detention center and, thus, not a suable entity for purposes of § 1983); *Id.* at 6 (dismissing Geo Group Inc. because it is a private entity and Plaintiff failed to allege that Geo Group Inc. promulgated a policy that caused a deprivation of constitutional rights). The Court further explained that under New Mexico law, the proper suable entity would be the Board of County Commissioners of Lea County ("Board"). *See* Mem. Op. and Order at 6 n.4; *see also* N.M. Stat. Ann. § 4–46–1 ("In all suits or proceedings by or against a county, the name in which the county shall sue or be sued shall be the board of county commissioners of the county."). Plaintiff's Amended Complaint names the Board as a defendant. *See* FAC at 1.

That being said, Plaintiff continues to name Lea County Correctional Facility and Geo Group Inc. as defendants in his Amended Complaint. *See* FAC at 1. The Court will not reconsider its dismissal of Lea County Correctional Facility because it is abundantly clear that it is not a suable entity under § 1983. *See White v. Utah*, 5 F. App'x 852, 853 (10th Cir. 2001) (unpublished) (upholding dismissal of suit against county jail because there was "no statutory or case authority supporting a direct action against a county's subdivisions, including its jails"). As to Geo Group Inc., Plaintiff attempts to cure the deficiencies in his Complaint by now asserting that Geo Group maintained an unconstitutional policy. *See* FAC at 1.

Specifically, Plaintiff alleges that the Board and Geo Group Inc. had a policy of removing inmates from protective custody and placing them into the general population. *Id.* This was purportedly done as part of a drug suppression program. *Id.* Plaintiff maintains that by taking inmates from protective custody and placing them into general population, the Board and Geo Group Inc. knowingly, or with deliberate indifference, put inmates who were formerly in protective custody in danger. *Id.* In particular, Plaintiff claims that he was the victim of two severe assaults as a result of his transfer from protective custody to general population. *Id.* at 2. This policy, he asserts, violates the Eighth Amendment. *Id.* at 1.

To determine whether Plaintiff has sufficiently alleged a constitutional violation caused by a policy of the Board, Geo Group Inc., or both, the Court must determine whether Plaintiff's identified harm was caused by a constitutional violation and whether Plaintiff has sufficiently alleged that the defendants are responsible for that violation. *See Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 120 (1992).

Plaintiff maintains that his harm was the result of an Eighth Amendment violation. "[T]he Eighth Amendment, which is applicable to the States through the Fourteenth Amendment, *Robinson v. California*, 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962), imposes [limitations] upon the conditions in which a State may confine those convicted of crimes." *Rhodes v. Chapman*, 452 U.S. 337, 344–45 (1981). The Supreme Court has instructed that "[b]eing violently assaulted in prison is simply not 'part of the penalty that criminal offenders pay for their offenses against society.'" *Framer v. Brennan*, 511 U.S. 825, 834 (1994) (quoting *Rhodes*, 452 U.S at 347). Accordingly, "prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." *Farmer*, 511 U.S. at 833 (ellipses in original). "For a claim (like the one here) based on a failure to prevent harm, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Id.* at 834. He must also show "that state of mind is one of 'deliberate indifference' to inmate health or safety." *Id.*

Here, Plaintiff sufficiently alleges that his harm was caused by an Eighth Amendment violation. With respect to the first requirement, Plaintiff claims that the conditions of his confinement posed a substantial risk of serious harm. He asserts that he has "known enemies" who targeted him because of his protective custody status. FAC at 2. He states that on October 4, 2017, he was approached by another inmate who asked about his protective custody status. *Id.* The inmate then proceeded to punch Plaintiff repeatedly until Plaintiff lost consciousness. *Id.* As a result of this assault, Plaintiff reports that he suffered a concussion and a broken nose. *Id.* at 3. Plaintiff explains that his second assault occurred on September 4, 2018. *Id.* at 2. In that assault, Plaintiff was repeatedly punched in the face, which resulted in another concussion. *Id.* at 2–3. The Court believes that those facts, as alleged by Plaintiff, satisfy the substantial risk of serious harm

requirement to proceed with an Eighth Amendment claim. *Cf. Howard v. Waide*, 534 F.3d 1227, 1237 (10th Cir. 2008) (concluding that an inmate who was targeted for his sexual orientation, build, and criminal history, and who was threatened, sexually assaulted, and prostituted against his will, established an objective, substantial risk of serious harm).

Regarding the scienter requirement, "[a]n official acts with deliberate indifference when he knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Redmond v. Crowther*, 882 F.3d 927, 936 n.3 (10th Cir. 2018) (internal quotation marks omitted). Here, Plaintiff alleges that the Board and Geo Group Inc. knew the risks associated with the transfer of inmates from protective custody to general population. FAC at 1. Nevertheless, Plaintiff asserts that they were deliberately indifferent to those risks. The Court finds that Plaintiff has sufficiently alleged that the Board and Geo Group Inc. were deliberately indifferent.

Having concluded that Plaintiff sufficiently alleged a constitutional violation, the Court will address whether Plaintiff has alleged liability based on an official policy. To successfully allege a government's policy or custom violated § 1983, a plaintiff must identify the policy or custom that caused the injury and show that the policy was enacted or maintained with deliberate indifference to an almost inevitable constitutional injury. *See Monell v. Dep't of Soc. Serv.*, 436 U.S. 658, 691–92 (1978); *Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 403 (1997). The requirements for these claims can be distilled into three elements: "(1) official policy or custom, (2) causation, and (3) state of mind." *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 769 (10th Cir. 2013).

"The 'official policy' requirement was intended to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986) (emphasis in original). "A challenged practice may be deemed an official policy or custom for § 1983 municipal-liability purposes if it is a formally promulgated policy, a well-settled custom or practice, a final decision by a municipal policymaker, or deliberately indifferent training or supervision." *Schneider*, 717 F.3d at 770. "To establish the causation element, the challenged policy or practice must be closely related to the violation of the plaintiff's federally protected right." *Id.* (internal quotation marks omitted). "This requirement is satisfied if the plaintiff shows that 'the municipality was the 'moving force' behind the injury alleged.'" *Id.* (quoting *Brown*, 520 U.S. at 404). Finally, "a plaintiff seeking to establish municipal liability on the theory that a facially lawful municipal action has led an employee to violate a plaintiff's rights must demonstrate that the municipal action was taken with 'deliberate indifference' as to its known or obvious consequences." *Brown*, 520 U.S. at 407.

Here, Plaintiff alleges that an officially promulgated policy existed, i.e., the drug suppression program. FAC at 1. Thus, Plaintiff has sufficiently alleged the "official policy or custom" element. *See Schneider*, 717 F.3d at 770. With respect to causation, Plaintiff maintains that as a result of the policy, his Eighth Amendment rights were violated. More specifically, Plaintiff claims that when he was transferred from a protective housing unit to general population, he was the victim of two severe assaults by his "known enemies" who knew of his protective custody status. FAC at 2; *see Farmer*, 511 U.S. at 833 (recognizing that "prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." (ellipses in original)).

Finally, Plaintiff alleges that the Board and Geo Group Inc. knew of the risks, but were nevertheless deliberately indifferent to those risks, thus satisfying the scienter requirement. FAC at 2. Accordingly, Plaintiff has sufficiently alleged a prima facie case for § 1983 liability against the Board and Geo Group Inc.

2. Eighth Amendment claim against Defendants Beaird and Smith

In addition to the unconstitutional policy claim against the Board and Geo Group Inc., Plaintiff asserts that the same facts support an Eighth Amendment claim again individual Defendants Beaird and Smith. FAC at 3. According to Defendant, both Beaird and Smith were aware of Plaintiff's protective custody status. *Id.* Further, Plaintiff claims that "[i]t is common knowledge that a protective custody inmate cannot be placed in general population and remain safe." *Id.* Plaintiff maintains that Beaird and Smith knew that Plaintiff would be "assaulted or killed in a general population facility or housing." *Id.* And, as a result of their actions, Plaintiff asserts that he was assaulted twice. *Id.* at 2.

Plaintiff has sufficiently alleged an Eighth Amendment claim against Defendants Beaird and Smith. As set forth above, Plaintiff alleges that there existed a substantial risk of serious harm. Further, he maintains that Defendants Beaird and Smith knew of that risk and were deliberately indifferent to it—indeed, Plaintiff claims that they recommended him for placement in general population despite knowing the risks. *Id.* at 2. He further claims that they moved him to the top of a waiting list of inmates to be transferred into general population and denied him a hearing prior to the transfer. *Id.* Thus, Plaintiff's Eighth Amendment claim against Defendants Beaird and Smith may proceed.

3.  Double Jeopardy

Plaintiff claims that he was "twice punished for the same offense." FAC at 4. Plaintiff does not specify which defendant allegedly "punished" him. Nor does he explain which "offense" he was punished for. Nevertheless, Plaintiff asserts that he lost visitation rights for a year and was transferred to a different facility. The Court will presume that these actions were a result of Plaintiff's disciplinary proceeding, which arose out of conduct involving Plaintiff's mother purportedly smuggling drugs into Lea County Correctional Facility. The Double Jeopardy clause only applies to proceedings that are "essentially criminal" in nature, *see Breed v. Jones*, 421 U.S. 519, 528 (1975), and "it is well established that prison disciplinary sanctions"—such as those alleged here—"do not implicate" double jeopardy protections. *Wirsching v. Colorado*, 360 F.3d 1191, 1205 (10th Cir. 2004). Thus, Plaintiff fails to allege a valid Double Jeopardy claim.

4.  Property allegations against Defendant Puente

Plaintiff asserts that Defendant Puente's alleged confiscation and destruction of Plaintiff's property violated Lea County Correctional Facility policy and, more importantly, violated his constitutional right to access the courts. FAC at 6. The property Plaintiff alleges Defendant Puente confiscated or destroyed includes personal electronics, letters, pictures, and legal documents. *Id.* at 5. In the Court's October 18, 2019, Memorandum Opinion and Order (Doc. 12), the Court concluded that Plaintiff had adequately alleged an access to the courts claim based on these facts. *See* Mem. Op. and Order at 11. Because Plaintiff's Amended Complaint asserts the same facts supporting this claim as his Complaint, the Court concludes that, for the same reasons described in its Memorandum Opinion and Order, Plaintiff has adequately alleged an access to the courts claim.

Plaintiff also claims that Defendant Puente's actions were in retaliation for his exercise of his First Amendment rights. FAC at 7. Like Plaintiff's access to the courts claim, the Court previously concluded that his retaliation claim against Defendant Puente was adequately pleaded. *See* Mem. Op. and Order at 12. Because his Amended Complaint reasserts the same facts, the Court again concludes that Plaintiff's retaliation claim against Defendant Puente may proceed.

5. Retaliation claim against Defendant Beaird

In his Amended Complaint, Plaintiff brings a retaliation claim against Defendant Beaird. FAC at 2. Specifically, Plaintiff posits that Defendant Beaird knew that Plaintiff would file a lawsuit or additional grievances, because he had done so in the past. *Id.* Accordingly, Plaintiff maintains that Defendant Beaird confiscated the remains of the legal documents that Defendant Puente purportedly destroyed in an attempt to conceal Defendant Puente's actions and prevent Plaintiff from further exercising his First Amendment rights. *Id.*

"Prison officials may not retaliate against or harass an inmate because of the inmate's exercise of his right of access to the courts." *Smith v. Maschner*, 899 F.2d 940, 947 (10th Cir. 1990) (describing a prison official's retaliation after inmate had filed grievances against the prison official); *see also Wright v. Newsome*, 795 F.2d 964, 968 (11th Cir. 1986) (holding that action taken in retaliation for inmate's filing of administrative grievance violates inmate's First Amendment rights). Indeed, "[i]t is well established that an act in retaliation for the exercise of a constitutionally protected right is actionable under . . . Section 1983 even if the act, when taken for a different reason, would have been proper." *Smith*, 899 F.2d at 948 (quoting *Buise v. Hudkins*, 584 F.2d 223, 229 (7th Cir. 1978)). But "[a]n inmate claiming retaliation must allege *specific facts* showing retaliation because of the exercise of the prisoner's constitutional rights." *Peterson v.*

*Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998) (internal quotation marks omitted) (emphasis in original).

Plaintiff sufficiently alleges a retaliation claim against Defendant Beaird. According to Plaintiff, Defendant Beaird had knowledge of the grievances Plaintiff filed in the past. FAC at 2. Further, he alleges that Defendant Beaird confiscated the remains of the legal documents that Defendant Puente allegedly destroyed in order to prevent Plaintiff from further exercising his rights to file grievances or a lawsuit. Because those rights are constitutionally protected, Plaintiff has sufficiently pleaded a retaliation claim against Defendant Beaird.

6. Due Process claim against Defendant Puente

Plaintiff brings a Fourteenth Amendment claim against Defendant Puente for purportedly destroying his legal documents without due process. FAC at 8.

> To demonstrate a due process violation when the government destroys potentially exculpatory evidence . . ., it is not enough to show that the lost evidence had some potential exculpatory value. The defendant must also demonstrate a lack of other evidence sufficient to establish the same point, and show that the government acted in bad faith in destroying or losing the evidence.

*United States v. Updike*, 51 F. App'x 643, 645 (9th Cir. 2002) (unpublished) (citing *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988)); *see also United States v. Cayatineto*, 49 F. App'x 278, 281 (10th Cir. 2002) (unpublished) ("Failure to preserve potentially exculpatory evidence does not violate the Due Process Clause absent a showing of 'constitutional materiality,' and bad faith." (internal citations omitted)).

The Court believes that Plaintiff has sufficiently pleaded a due process violation with respect to Defendant Puente's alleged destruction of Plaintiff's alibi statement and petition for a writ of habeas corpus. As recounted in the Court's October 18, 2019, Memorandum Opinion and

Order, Plaintiff has alleged that he can never get back the information that Defendant Puente purportedly destroyed. Mem. Op. and Order at 10–11. Based on that allegation, Plaintiff has sufficiently pleaded that other evidence does not exist that can replace what was destroyed. Further, Plaintiff has consistently maintained that Defendant Puente acted deliberately to destroy his documents, in violation of the correctional facility's policy and in retaliation for Plaintiff's exercise of his First Amendment rights. *Id.* While Plaintiff does not include the phrase "bad faith," the Court finds that Plaintiff sufficiently alleged that Defendant Puente did act in bad faith. Accordingly, the Court finds Plaintiff's allegations sufficient, at the screening stage, to state a cognizable claim for denial of due process.

      7.   Due Process and Equal Protection claims against Defendants Beaird, Smith, and Rivas

      Finally, Plaintiff asserts that Defendants Beaird, Smith, and Rivas violated his procedural due process and equal protection rights when they transferred Plaintiff from protective custody to general population. *See* FAC at 8. The Court will first address Plaintiff's due process claim.

      "To be entitled to procedural due process, [a plaintiff] must prove [he] has either a protected property or liberty interest." *Martin Marietta Materials, Inc. v. Kansas Dep't of Transp.*, 810 F.3d 1161, 1171 (10th Cir. 2016). Here, Plaintiff alleges he had a liberty interest in remaining in protective custody, and that Defendants Beaird, Smith, and Rivas deprived him of that liberty interest by transferring him to general population without a hearing. *See* FAC at 8. Plaintiff's Amended Complaint further suggests that his "liberty interest" was violated when he was removed from protective custody and sent to "dangerous general population prisons." *Id.*

      First, the Court notes that it is well settled that a mere transfer between institutions does not implicate the due process clause, even if the transfer results in a detrimental change in living

conditions. *Meachum v. Fano*, 427 U.S. 215, 225 (1976); *Montez v. McKinna*, 208 F.3d 862, 866 (10th Cir. 2000) (stating that "there is no federal constitutional right to incarceration in any particular prison or portion of a prison"). Thus, Plaintiff fails to state a due process claim on that ground.

Plaintiff also asserts, however, that as an inmate who was once classified as a "protective custody" inmate, he has a liberty interest in maintaining that custody classification. FAC at 8. He thus claims he was entitled to a hearing prior to his transfer. *Id.* at 2, 8.

In general, a prisoner has no inherent constitutional right to enjoy a particular security classification. *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976); *Templeman v. Gunter*, 16 F.3d 367, 369 (10th Cir. 1994). A liberty interest, however, may arise if the change in classification restricts the inmate's freedom in such a way as to "impos[e] atypical and significant hardships on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). The Court finds, under the circumstances of this case, that the change in Plaintiff's classification does not give rise to a due process claim.

In reaching that conclusion, the Court notes that most of the cases on liberty interests in prison classification involve inmates who challenge their placement into involuntary protective custody, "administrative segregation," or some other classification which places heightened constraints on their liberty, rather than inmates who challenge their release from voluntary protective custody into the less restrictive general inmate population. *See, e.g.*, *Brooks v. Raemisch*, 717 F. App'x 766, 769 (10th Cir. 2017) (unpublished) ("A protected liberty interest only arises from a transfer to harsher conditions of confinement when an inmate faces an 'atypical and significant hardship . . . in relation to the ordinary incidents of prison life.'"); *Rezaq v. Nalley*,

677 F.3d 1001, 1011 (10th Cir. 2012) (same). Indeed, the Tenth Circuit has identified four factors for the Court to analyze in determining whether a protected liberty interest exists in *those* situations. *See Estate of DiMarco v. Wyoming Dep't of Corr., Div. of Prisons*, 473 F.3d 1334, 1342 (10th Cir. 2007) ("Relevant factors might include whether (1) the segregation relates to and furthers a legitimate penological interest, such as safety or rehabilitation; (2) the conditions of placement are extreme; (3) the placement increases the duration of confinement, as it did in *Wilkinson [v. Austin*, 545 U.S. 209 (2005)]; and (4) the placement is indeterminate (in *Wilkinson* the placement was reviewed only annually)."). Thus, the consideration found dispositive in *Sandin v. Conner*, *i.e.*, freedom from restraints which might impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," generally does not apply when the inmate is being released from protective custody into the less restrictive general population. *Cf. Thompson v. Lengerich*, 2019 WL 7163374, at *7 (10th Cir. Dec. 23, 2019) ("[A] protected liberty interest only arises from a transfer to harsher conditions of confinement when an inmate faces an atypical and significant hardship in relation to the ordinary incidents of prison life." (quoting *Rezaq v. Nalley*, 677 F.3d 1001, 1011 (10th Cir. 2012)).

Accordingly, the Court concludes that Plaintiff's transfer to general population does not give rise to a protected liberty interested that requires due process protection. Plaintiff has thus failed to allege a due process violation.[5]

---

[5] The Court notes that Plaintiff has asserted an Eighth Amendment conditions of confinement claim, which the Court believes better fits the harm Plaintiff has identified—i.e., that while in general population he was subject to multiple assaults, and that Defendants knew or were deliberately indifferent to the fact that Plaintiff would be the target of attacks. Thus, Plaintiff's Eighth Amendment claim is the proper avenue for Plaintiff to seek relief from this alleged harm. *See Chavez v. Perry*, 2000 WL 36739513, at *4 (D.N.M. Nov. 14, 2000) (explaining that the plaintiff did not have a protected liberty interest in remaining in protective custody, but he did have an interest in being protected from the violence of other inmates under the Eighth Amendment); *see also Riddle v. Mondragon*, 83 F.3d 1197, 1202 (10th Cir. 1996) (noting that "where constitutional protection is afforded under specific constitutional provisions, alleged

The Court similarly concludes that Plaintiff fails to state an equal protection claim against Defendants Beaird, Smith, and Rivas. To state an equal protection claim, Plaintiff must make a threshold allegation that Defendants treated him differently from similarly situated individuals. *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (explaining that the Equal Protection Clause of the Fourteenth Amendment directs "that all persons similarly situated should be treated alike."). Indeed, a prisoner's equal protection claim fails where he does not allege any facts to demonstrate that prison officials "purposefully intended to discriminate against *him* as a member of an identifiable group." *Taylor v. Johnson*, 257 F.3d 470, 474 (5th Cir. 2001) (emphasis added); *Phillips v. Norris*, 320 F.3d 844, 848 (8th Cir. 2003) (concluding that inmate's equal protection claim failed as he did not allege he was a member of a protected class or suffered a violation of a fundamental right). Applying that rubric here, Plaintiff's claim fails for the simple reason that he did not adequately allege that Defendants Beaird, Smith, and Rivas treated him differently than similarly situated individuals.

It is worth noting that the Court has taken a very liberal view of Plaintiff's Amended Complaint. In his Amended Complaint, Plaintiff described his due process claim against Defendants Beaird, Smith, and Rivas, and then states: "Plaintiff believes that he has sufficiently stated an equal protection claim." FAC at 8. He later repeats, "Plaintiff asks this Court [to] review [these] equal protection violations." *Id.* Even if the Court were to conclude that those scant references to equal protection are sufficient to warrant an analysis of such claims, the facts Plaintiff relies on for his due process claim do not support an equal protection claim. For example, while

---

violations of the protection should be analyzed under those provisions and not under the more generalized provisions of substantive due process.").

18

Plaintiff alleges that his transfer from protective custody to general population caused atypical and significant hardship, he does not allege that he was treated differently than similarly situated individuals. Thus, Plaintiff fails to sufficiently allege an equal protection claim.

8. *Martinez* Report

Because Plaintiff has sufficiently alleged that Defendants violated certain constitutional rights under § 1983, the Court will order Defendants to file a *Martinez* report. The purpose of a *Martinez* report is to "develop a record sufficient to ascertain whether there are any factual or legal bases for the prisoner's claims." *Hall v. Bellmon*, 935 F.2d 1106, 1009 (10th. Cir. 1991) (citing *Martinez v. Aaron*, 570 F.2d 317, 318–19 (10th Cir. 1978)). This Court may order a defendant to investigate the incident or incidents underlying a lawsuit and to submit a report in order to develop a factual or legal basis for determining whether Plaintiff has a meritorious claim. *See, e.g., Gee v. Estes*, 829 F.2d 1005, 1007 (10th Cir. 1987).

**Conclusion**

IT IS ORDERED that

1. Plaintiff's double jeopardy claim is DISMISSED with prejudice;

2. Plaintiff's due process claim against Defendants Beaird, Smith, and Rivas is DISMISSED with prejudice;

3. Plaintiff's equal protection claim is DISMISSED with prejudice;

4. Defendants must respond to Plaintiff's surviving claims as identified by the Court in this Memorandum Opinion and Order and in the Court's October 18, 2019, Memorandum Opinion and Order. The *Martinez* report should address Plaintiff's surviving claims as well as any defenses Defendants wish to pursue, and it should

include, but is not limited to:

a. Setting forth the facts needed to resolve Plaintiff's claims including,

    i. the names of any persons who dealt directly with Plaintiff regarding his transfer to general population and the alleged incidents on October 4, 2017, and September 4, 2018;

    ii. whether any records or documents exist pertaining to the events at issue;

    iii. providing copies of all records and documents pertaining to the events at issue;

    iv. submitting affidavits in support of the Report, if necessary;

b. All records and documents submitted with the Report must have an index that identifies each record and document, by number, and each record and document must be marked with a tab or label showing its number. Additionally, the Report and each record and document submitted with the Report must have its pages numbered using Bates stamps, or a similar numbering system.

c. The submission of documents alone does not comply with this Order. Defendants are expected to also prepare the "report" portion of the Martinez Report that discusses Plaintiff's surviving claims and the submissions that relate to these claims.

d. A complete copy of the Report must be filed on the case docket and served on Plaintiff.

e. The Court is aware that materials contained in corrections and law enforcement

files may be sensitive and that there may be valid reasons for keeping such information secret. As such, Defendants may redact confidential portions of documents submitted with the Report and provide the redacted version to Plaintiff. Alternatively, Defendants may request that Plaintiff not be permitted to review certain portions of the Report and its attachments, in which event Defendants must make their objections to the Court by **May 14, 2020**. The entire Report must be submitted along with the objections, both under seal, to the Court for ruling.

5. Defendants must file and serve the Report and any dispositive motions on or before **June 1, 2020**.

6. Plaintiff may file his response to the Report and his response to any dispositive motions on or before **June 15, 2020**.

7. Defendants may file and serve their reply, if any, to Plaintiff's response on or before **June 29, 2020**.

8. The parties are hereby given notice that the *Martinez* Report may be used in deciding whether to grant summary judgment, either by motion or *sua sponte*. Therefore, the parties should submit, by **June 1, 2020**, whatever materials they consider relevant to Plaintiff's remaining claims.

_____
SENIOR UNITED STATES DISTRICT JUDGE