**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

PRESTON J. BLAKE,

     Plaintiff,

     v.                                               Civ. No. 17-807 MIS/KK

GEO GROUP, INC., *et al.*,

     Defendants.

**MAGISTRATE JUDGE'S PROPOSED FINDINGS
AND RECOMMENDED DISPOSITION**[1]

THIS MATTER is before the Court on:  (1) Defendants' *Martinez* Report (Doc. 48), filed September 8, 2020; (2) Defendants' Motion for Summary Judgment (Doc. 75), filed December 12, 2020; and, (3) Plaintiff's Motion for Summary Judgment or Motion for Mediation and Arbitration (Doc. 78), filed December 31, 2020.

Also before the Court are:  two motions to take discovery, *i.e.*, (1) Plaintiff's Motion to Seek Leave to Take Specific Non-Duplicative Discovery (Doc. 120), filed August 31, 2022, and (2) Plaintiff's Motion for Continuance and Extension to Allow Plaintiff [to] File and Submit Facts That Will Show or Create Genuine Issue[s] of Material Fact (Doc. 129), filed October 28, 2022; and, three motions for injunctive relief, *i.e.*, (1) Plaintiff's Motion for Injunctive Relief (Doc. 119), filed August 22, 2022, (2) Plaintiff's Motion for Court Ordered Injunction (Doc. 126), filed October 13, 2022, and (3) Plaintiff's Motion to Amend Injunction Filed – Motion to Supplement Additional Information and Facts as They Occur (Doc. 130), filed October 28, 2022.

---

[1] By an Order of Reference filed May 26, 2021, this matter was referred to me to perform any legal analysis required to recommend an ultimate disposition of the case. (Doc. 94.)

The Court, having reviewed the parties' submissions, the record, and the relevant law, and being otherwise sufficiently advised, proposes to find that Defendants' Motion for Summary Judgment (Doc. 75) is well-taken and recommends that it be GRANTED. The Court further recommends that Plaintiff's motions be DENIED.

## I. INTRODUCTION

Plaintiff Preston Blake, a state prisoner proceeding *pro se*, brings this action under 42 U.S.C. § 1983 against various Defendants associated with the Lea County Correctional Facility ("LCCF"). (Docs. 1, 19.) In his surviving claims, Plaintiff alleges that Defendants violated his constitutional rights by destroying his property and transferring him from protective custody to a general population setting. (Docs. 19, 20.) Defendants have moved for summary judgment on all claims. (Doc. 75.) For the reasons stated below, the Court recommends that summary judgment in Defendants' favor be granted, and that Plaintiff's motions for summary judgment, discovery, and injunctive relief be denied.

## II. BACKGROUND AND PROCEDURAL HISTORY

### A. Factual Background

Plaintiff was incarcerated at LCCF between February 29, 2015, and September 12, 2016. (Doc. 48-1 at 1-2 ¶ 4.) Defendant GEO Group, Inc. ("GEO") operates LCCF in accordance with New Mexico Corrections Department ("NMCD") policies and procedures. (Doc. 39-1 at 1 ¶¶ 1-3.[2]) When Plaintiff was housed at LCCF in 2015 and 2016, Defendant GEO employed Defendants Raymond Smith, John Beaird, and Juanita Puente at the facility. (Doc. 1 at 1 ¶ 2; Doc. 48-5 at 1 ¶

---

[2] On May 7, 2020, Plaintiff filed a motion for a preliminary injunction. (Doc. 21.) Defendants attached multiple exhibits to their response to this motion, which the Court subsequently denied as moot. (Docs. 39, 66.) Defendants refer to some of the exhibits attached to their response (Docs. 39-1 to 39-10) in their motion for summary judgment (Doc. 75), and the Court considers these exhibits as part of the record in this case.

1; Doc. 48-6 at 2 ¶ 8; Doc. 48-7 at 1 ¶ 1.) Defendant Smith was LCCF's Warden, Defendant Beaird was its Associate Warden for Security, and Defendant Puente was a correctional officer and, for a portion of the time, a property officer. (*Id.*)

On August 1, 2016, Plaintiff's mother, Sandra Stuart, came to visit Plaintiff at LCCF. (Doc. 1 at 13, 15.) Based on monitored phone calls, LCCF officers suspected that Ms. Stuart would try to introduce contraband during her visit. (*Id.*) Thus, they intercepted Ms. Stuart, who admitted to carrying a hidden balloon. (*Id.*) In the balloon, officers found 13 strips of suboxone and 2.32 grams of methamphetamine. (*Id.*) As a result, LCCF officers brought a disciplinary charge against Plaintiff for dealing in dangerous drugs. (*Id.* at 13, 19-26.) Plaintiff was placed on pre-hearing detention status and transferred from his protective custody housing unit into disciplinary restrictive housing. (*Id.* at 19, 25; Doc. 48-1 at 2 ¶ 4; Doc. 48-2 at 1.) In effectuating this transfer, LCCF officers took custody of Plaintiff's property, and Defendant Puente inspected it for contraband.[3] (Doc. 1 at 8; Doc. 48-7 at 1 ¶ 3.)

On or about August 31, 2016, Plaintiff's property was delivered to him in disciplinary segregation. (Doc. 1 at 8.) Plaintiff alleges that "he was simply brought trash bags full of loose papers and property" and that "most of his property" was "missing." (Doc. 19 at 5.) According to

---

[3] In this regard, Defendant Puente attests:

> I recall that some of the paperwork that was included in the materials delivered to me was stuck together, as if glued. Per my training and experience, paperwork is not read or reviewed, but must be thumbed through because inmates will at times glue stacks of papers together, hollow out the interior, and hide contraband…. When I discovered that some of Mr. Blake's paperwork was stuck together, I did peel back the paperwork that was glued together and discovered that Mr. Blake had hidden tattoo paraphernalia.

(Doc. 48-7 at 1-2 ¶¶ 3-4.) However, Plaintiff disputes that there was contraband hidden in his papers and points out that there is no evidence Defendant Puente submitted a misconduct report against him for possession of tattoo paraphernalia. (Doc. 58 at 9, 12.)

Plaintiff, "[Defendant] Puente did not simply search Plaintiff's property, she destroyed it deliberately" and "chose to throw away most of [it], taking whatever she wanted (including legal documents) and trashing it. Even family photos and electronics." (*Id.*) Among the legal documents Plaintiff alleges were missing was "a prepared habeas corpus [petition] that included an affidavit" from an alibi witness. (*Id.*) Plaintiff further alleges that Defendant Puente destroyed his property to retaliate for grievances he had filed against her. (*Id.* at 4-5.)

Plaintiff also claims that Defendant Beaird later came to his cell and confiscated the damaged "legal documents and torn folders Plaintiff intended to use as evidence of [Defendant] Puente's actions." (*Id.* at 2.) Plaintiff alleges that Defendant Beaird did so to retaliate for previous grievances and lawsuits filed against him, and to prevent Plaintiff from bringing a new lawsuit for Defendant Puente's destruction of his property. (*Id.* at 2-3.)

On August 16, 2016, Plaintiff was found guilty of dealing in dangerous drugs. (Doc. 1 at 19.) He was sanctioned to 30 days of disciplinary segregation and 365 days of suspended visitation, commissary, and phone privileges. (*Id.*) Because of the finding of guilt and sanctions and upon Defendant Smith's recommendation, Plaintiff met the criteria for placement in the NMCD's Drug Suppression Program ("DSP").[4] (Doc. 48-3 at 3.) At that time, the DSP was administered at the Penitentiary of New Mexico ("PNM"), and Plaintiff remained in restrictive housing at LCCF until he was transferred to PNM for placement in the DSP on September 12, 2016. (Doc. 1 at 26; Doc. 48-1 at 2 ¶¶ 4-5; Doc. 48-2 at 1; Doc. 48-3 at 2; Doc. 48-5 at 1 ¶ 3.)

---

[4] According to NMCD policy, the DSP "provide[s] intensive treatment for inmates with drug trafficking offenses in a close custody General Population setting" and "temporarily separate[s] these inmates from other general population inmates to protect the integrity of recidivism reduction programming in those populations." (Doc. 48-3 at 1.)

In August of the following year, Plaintiff was transferred from PNM to the Guadalupe County Correctional Facility ("GCCF"). (Doc. 48-2 at 1.) Plaintiff alleges that he was placed in general population at GCCF, and that on October 4, 2017, another inmate punched and stomped on him because of his former "protective custody status." (Doc. 19 at 2-3.) On February 22, 2018, Plaintiff was transferred to the Central New Mexico Correctional Facility, and four days later, to the Southern New Mexico Correctional Facility ("SNMCF"). (Doc. 48-2 at 1.) Plaintiff alleges that on September 4, 2018, an inmate at SNMCF repeatedly punched him in the face for about three to five minutes. (Doc. 19 at 2–3.)

Plaintiff claims that because he was in protective custody before his transfer to PNM, he can never be housed in the general population of any facility without risking assault or death at the hands of other inmates. (Doc. 19 at 1-3; Doc. 58 at 11; Doc. 60 at 1 ¶¶ 2-3.) Plaintiff asserts that he was placed in general population while in the DSP at PNM and, though he "was not assaulted physically" there, he was "under constant confrontation and threat." (Doc. 58 at 8.) Plaintiff further alleges that his initial transfer to the DSP caused him to be placed in general population when he was transferred again, leading to the assaults he suffered at GCCF and SNMCF. (Doc. 19 at 2-3.) In addition, Plaintiff alleges that Defendants GEO and the Board of County Commissioners of Lea County ("the Board")[5] maintained an unconstitutional policy of placing protective custody inmates in general population in the DSP. (*Id.* at 1.)

---

[5] The Board is the elected legislative and policymaking body for Lea County, New Mexico. N.M. Stat. Ann. §§ 4-13-1, 4-38-1, 4-38-2, 4-38-6. Although LCCF is located in Lea County, the Board plays no role in the operation or administration of the facility, which is a privately-run prison housing inmates in the NMCD's custody. (Doc. 39-1 at 1 ¶¶ 1-3); *see also* https://www.cd.nm.gov/divisions/adult-prison/nmcd-prison-facilities/lea-county-correctional-facility/ (last accessed Dec. 15, 2022). For this reason, and because it did not promulgate the policy Plaintiff challenges, the Court has separately recommended that the Board be granted summary judgment on Plaintiff's claims against it. (Doc. 109.) However, the Board is also entitled to summary judgment for the additional reason discussed in Section IV.C.2, *infra*.

### B.  Procedural History

Plaintiff filed his initial *pro se* complaint on August 8, 2017, asserting three counts. (Doc. 1.) In Count I, Plaintiff claimed that Defendant Smith and former Defendant L. Rivas violated his due process rights based on their conduct during his August 2016 disciplinary hearing and the sanctions they imposed. (*Id.* at 2-3, 8.) In Count II, Plaintiff alleged that Defendant Puente violated his equal protection and due process rights under the Fourteenth Amendment, and denied him access to the courts and retaliated against him in violation of the First, Fifth, and Fourteenth Amendments, when she destroyed his property. (*Id.* at 3, 8-9.) And in Count III, Plaintiff claimed that he had been denied access to the prison law library in violation of the First, Fifth, and Fourteenth Amendments.  (*Id.* at 4.)

On October 18, 2019, the Court entered a Memorandum Opinion and Order regarding Plaintiff's original complaint pursuant to its review under 28 U.S.C. § 1915(e)(2). (Doc. 12.) The Court determined that Plaintiff had sufficiently asserted constitutional claims against Defendant Puente for denial of access to the courts and retaliation based on the destruction of his property. (*Id.* at 12.) The Court dismissed Plaintiff's remaining claims without prejudice and gave him leave to file an amended complaint. (*Id.* at 13-14.)

On January 17, 2020, Plaintiff duly filed an amended complaint, in which he asserted additional claims and attempted to remedy the defects in his original complaint. (Doc. 19.) On April 3, 2020, the Court issued a Memorandum Opinion and Order for Martinez Report under Section 1915(e)(2). (Doc. 20.) The Court determined that, in his amended complaint, Plaintiff sufficiently stated the following claims:

1)  That Defendant Puente violated Plaintiff's First Amendment right of access to the courts by destroying his habeas corpus petition and supporting affidavit, (*id.* at 12 (citing Doc. 12 at 11));

2)  That Defendant Puente destroyed Plaintiff's property in retaliation for Plaintiff's exercise of his First Amendment rights, (*id.* at 13);

3)  That Defendant Beaird destroyed Plaintiff's property in retaliation for Plaintiff's exercise of First Amendment rights, (*id.* at 14);

4)  That Defendant Puente violated Plaintiff's Fourteenth Amendment due process rights by destroying the affidavit of his alibi witness, (*id.* at 15);

5)  That Defendants Smith and Beaird violated Plaintiff's Eighth Amendment rights by causing him to be placed in general population in the DSP, where he was at substantial risk of serious harm, (*id.* at 11); and,

6)  That Defendants GEO and the Board maintained an unconstitutional policy "of removing inmates from protective custody and placing them into the general population" as part of the DSP. (*Id.* at 7, 10-11.)

The Court ordered Defendants to file a *Martinez* Report as to these claims and dismissed Plaintiff's remaining claims with prejudice. (*Id.* at 7 (dismissing renewed claims against LCCF), 12, 19 (dismissing double jeopardy claims), 17, 19 (dismissing procedural due process claims), 18-19 (dismissing equal protection claims), 19-21 (ordering *Martinez* Report on surviving claims).)

Defendants filed their *Martinez* Report on September 8, 2020. (Doc. 48.) On October 5, 2020, Plaintiff filed a response to the report, and on November 2, 2020, Defendants filed a reply. (Docs. 58, 65.) In addition, on November 23, 2020, Plaintiff filed a surreply without the Court's leave. (Doc. 70.)

Defendants filed a motion for summary judgment on December 12, 2020, and Plaintiff filed a motion for summary judgment on December 31, 2020. (Docs. 75, 78.) Plaintiff responded in opposition to Defendants' motion on January 6, 2021, and Defendants replied in support of it on January 20, 2021. (Docs. 81, 84.) As previously noted, Plaintiff filed two motions to take discovery on August 31, 2022, and October 28, 2022, (Docs. 120, 129), and three motions for injunctive relief that are currently pending, on August 22, 2022, October 13, 2022, and October 28, 2022. (Docs. 119, 126, 130.)

## III.   LEGAL STANDARDS

Under Federal Rule of Civil Procedure 56, a court must "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of showing "that there is an absence of evidence to support the nonmoving party's case." *Bacchus Indus., Inc. v. Arvin Indus., Inc*., 939 F.2d 887, 891 (10th Cir. 1991) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). If this burden is met, the non-moving party must designate specific facts showing a genuine issue for trial. *See Celotex Corp*., 477 U.S. at 324; *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 256 (1986); *Vitkus v. Beatrice Co*., 11 F.3d 1535, 1539 (10th Cir. 1993).

"An issue is 'genuine' if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way. An issue of fact is 'material' if under the substantive law it is essential to the proper disposition of the claim." *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citation omitted). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute,

or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

For purposes of summary judgment, a prisoner's complaint is treated as evidence if it alleges specific facts based on the prisoner's personal knowledge and has been subscribed under penalty of perjury. *Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir. 1991); 28 U.S.C. § 1746. "A pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers." *Hall*, 935 F.2d at 1110. However, "it is [not] the proper function of the district court to assume the role of advocate for the pro se litigant." *Id.*

When reviewing a motion for summary judgment, the Court must keep three principles in mind. First, the Court's role is not to weigh the evidence and determine the truth of the matter, but to assess the threshold issue of whether a genuine issue of material fact exists. *Anderson*, 477 U.S. at 249. Second, the Court must draw all reasonable inferences in favor of the non-moving party and construe all evidence in the light most favorable to that party. *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999). Finally, the Court cannot decide issues of credibility. *Anderson*, 477 U.S. at 255. "[T]o survive the … motion, [the nonmovant] need only present evidence from which a jury might return a verdict in his favor." *Id.* at 257.

## IV. DISCUSSION

### A. Exhaustion of Administrative Remedies

In their summary judgment motion, Defendants argue that the Court should dismiss Plaintiff's claims because he failed to exhaust his administrative remedies. (Doc. 75 at 11-13.) Under the Prison Litigation Reform Act ("PLRA"), "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available

are exhausted." 42 U.S.C. § 1997e(a). This exhaustion requirement "seeks to afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006) (quotation marks and brackets omitted). Thus, the PLRA requires "proper exhaustion," whereby the prisoner complies with the applicable "deadlines and other critical procedural rules," as a precondition to bringing suit in federal court. *Id.* at 90-91, 93. Moreover, an inmate must exhaust all available administrative remedies even if those remedies "appear to be futile at providing the kind of remedy sought," and if he fails to do so, his claims must be dismissed. *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002); *see also Ross v. Blake*, 578 U.S. 632, 640 (2016).

Failure to exhaust administrative remedies under the PLRA is an affirmative defense, *Jones v. Bock*, 549 U.S. 199, 216 (2007), and the defendant "bear[s] the burden of asserting and proving that the plaintiff did not utilize administrative remedies." *Tuckel v. Grover*, 660 F.3d 1249, 1254 (10th Cir. 2011). If the defendant makes the required showing, then the burden shifts to the plaintiff "to show that remedies were unavailable to him." *Id.* "Where prison officials prevent, thwart, or hinder a prisoner's efforts to avail himself of an administrative remedy, they render that remedy 'unavailable' and a court will excuse the prisoner's failure to exhaust." *Little v. Jones*, 607 F.3d 1245, 1250 (10th Cir. 2010); *see also Ross*, 578 U.S. at 644; *McMiller v. Jones*, 590 F. App'x 749, 750-51 (10th Cir. 2014).

The NMCD grievance procedure in effect at LCCF at the relevant time consisted of three steps. (Doc. 48-6 at 1-2 ¶ 5.) First, the inmate was required to file an informal complaint within five working days of the incident giving rise to the complaint. (*Id.* at 13, 38.) Second, if the inmate

was dissatisfied with the response to the informal complaint, he could file a formal grievance.[6] (*Id.*) Third, if the inmate was dissatisfied with the decision on the formal grievance, he could appeal to the Office of the Secretary of Corrections within five working days of receiving the decision. (*Id.* at 18, 42.) Only by completing all three steps was an inmate considered to have exhausted his administrative remedies. (*Id.* at 2 ¶ 6; *id.* at 4, 31.)

### 1. Administrative Exhaustion of Plaintiff's Destruction of Property Claims

Defendants argue that Plaintiff failed to exhaust his administrative remedies with respect to his claims against Defendants Puente and Beaird based on the destruction of his property. (Doc. 75 at 11-13.) Moriama Valeriano, LCCF's grievance coordinator in September 2020, attested that she "reviewed the grievance logs and informal complaint logs covering the time period of February 2015 through September 2016," and determined that Plaintiff "did not make any informal complaint against [Defendant] Puente and did not make, let alone exhaust administrative remedies, via any formal grievance against [Defendant] Puente." (Doc. 48-6 at 2 ¶ 8.) Ms. Valeriano also attested that Plaintiff "did not file any grievance directed at [Defendant] Beaird." (*Id.*)

Plaintiff, in contrast, argues that he filed both informal complaints and formal grievances related to the destruction of his property, but "L.C.C.F. blatantly refused to respond" to them. (Doc. 81 at 1; *see also* Doc. 58 at 2, 7.) As evidence, Plaintiff submitted personal logs which he asserts are "accurate to the best of [his] knowledge, under penalty of perjury." (Doc. 58 at 2.) These

---

[6] The grievance procedure was not entirely clear about the deadline for filing a formal grievance, stating that one should be filed "within five (5) working days of the receipt of Informal Complainant [sic] to the Institution Grievance Officer." (Doc. 48-6 at 13, 38.) It appears that the "Institution Grievance Officer" received informal complaints from the institutional designee in charge of resolving them; this designee was required to return *resolved* complaints to the inmate, with a copy to the grievance officer, within five working days of receiving the complaint from the inmate. (*Id.*) Alternatively, though, the institutional designee could return *unresolved* complaints to the inmate "to be attached to the formal grievance if submitted," and in this instance the deadline for the inmate to file a formal grievance does not appear to have been expressly stated. (*Id.*)

logs include the following entries documenting Plaintiff's complaints, grievances, and letters to LCCF officials regarding the confiscation and alleged destruction of his property in August 2016:

8-16-16   Informal filed on missing property … Enclosed are property forms …
9-1-16   Formals filed and informal begins on legal destruction.
9-12-16   Wrote to Warden Smith for a second time about follow up.
9-12-16   Letter to grievance officer on issue again, why no informals or grievance answered.

(*Id.* at 16 (ellipses in original).) In addition, in his original complaint, which was submitted under penalty of perjury, Plaintiff wrote that he filed:  an "informal on property" on August 1, 2016; a "formal grievance on property" on August 5, 2016; another "informal on property" on August 16, 2016; a "second grievance" on September 1, 2016; and, a "grievance appeal" on September 29, 2016. (Doc. 1 at 9-10.)

Plaintiff has also submitted copies of: (1) a letter dated September 13, 2016, in which he asked the grievance officer at PNM for an update on the "property loss" grievance he had filed at LCCF, on which a notation states, "Emailed copy to Hobbs," (Doc. 58 at 36); and, (2) a "Grievance Correspondence Response" from Steve Madrid, Acting Statewide Grievance/Disciplinary Manager, dated September 22, 2016, regarding Plaintiff's "missing property," stating, "I know you stated that you have done the informal complaint and grievance without getting a response. Continue to follow up as it cannot be appealed until you get the grievance back answered."[7] (*Id.* at 37.)

As discussed in Section III, *supra*, "[i]t is not the task of a court considering summary judgment to weigh the evidence." *Sealock v. Colorado*, 218 F.3d 1205, 1210 n.4 (10th Cir. 2000).

---

[7] Plaintiff has also submitted copies of several documents that he submitted to officials at PNM regarding missing property, which may have been addressed to PNM officers' actions and do not appear to have been sent to LCCF. (*See* Doc. 58 at 38, 41-43, 45; *cf.* Doc. 48-6 at 16, 40 (per NMCD policy, a grievance submitted at one facility "that should be resolved at a different facility" should be "forward[ed] … to the appropriate facility electronically").)

Rather, the Court must only consider whether the evidence presented is sufficient to create a material issue of fact. *Hunt*, 526 U.S. at 552–53. Here, the Court cannot say that the evidence regarding exhaustion of Plaintiff's administrative remedies with respect to his destruction of property claims is "so one-sided that one party must prevail as a matter of law." *True v. United States*, 190 F.3d 1165, 1176 (10th Cir. 1999) (quoting *Bingaman v. Kansas City Power & Light Co.*, 1 F.3d 976, 980 (10th Cir. 1993)). Rather, the Court proposes to find that there are genuine, material factual disputes regarding whether Plaintiff tried to exhaust his administrative remedies but was unable to do so because prison officials thwarted his efforts, thereby rendering those remedies unavailable to him. *Little*, 607 F.3d at 1250.

## 2. Administrative Exhaustion of Plaintiff's Eighth Amendment Claims

Defendants also argue that Plaintiff failed to exhaust his administrative remedies with respect to his Eighth Amendment claims against Defendants Beaird and Smith.[8] (Doc. 75 at 11-13.) In support of this argument, Ms. Valeriano attested that between February 2015 and September 2016, Plaintiff "did not file any grievance directed at [Defendant] Beaird or [Defendant] Smith." (Doc. 48-6 at 2 ¶ 8.)

However, Plaintiff's Eighth Amendment claims are based on his allegedly improper transfer from protective custody at LCCF to a general population setting at PNM. (Doc. 19 at 1-4.) And, under the applicable NMCD policy, inmates could not grieve matters "involving a classification decision"; instead, "[a] separate appeal process [was] provided by Department policy for classification actions." (Doc. 48-6 at 9, 35.) Defendants have presented no evidence to show whether Plaintiff made use of this separate appeal process to challenge his transfer to the DSP at

---

[8] Defendants have not raised failure to exhaust as an affirmative defense with respect to Plaintiff's *Monell* claims against Defendants GEO and the Board. (*See* Doc. 75 at 11-13.)

PNM and have therefore failed to meet their burden of "proving that [P]laintiff did not utilize administrative remedies" with respect to his Eighth Amendment claims against Defendants Smith and Beaird.[9] *Tuckel*, 660 F.3d at 1254. As such, dismissal of these claims for failure to exhaust administrative remedies is not warranted.

**B.  Plaintiff's Destruction of Property Claims Against Defendants Puente and Beaird**

Having determined that Defendants' exhaustion arguments are unavailing, the Court next turns to the substance of Plaintiff's claims, which Defendants also challenge in their motion. (*See* Doc. 75 at 11, 13-18.) As noted in Section II.B., *supra*, Plaintiff brings four surviving claims based on the alleged destruction of his property, *i.e.*, that:   (1) Defendant Puente violated his constitutional right of access to the courts by destroying his habeas petition and supporting affidavit; (2) Defendant Puente destroyed Plaintiff's property in retaliation for his exercise of First Amendment rights; (3) Defendant Beaird destroyed Plaintiff's property in retaliation for his exercise of First Amendment rights; and, (4) Defendant Puente violated Plaintiff's Fourteenth Amendment due process rights by destroying the affidavit of his alibi witness. (Doc. 20 at 12-15.)

> *1.  Plaintiff's Claim Against Defendant Puente for Violation of his Constitutional Right of Access to the Courts*

The constitutional right of access to the courts is

> rooted in the Due Process Clause of the Fourteenth Amendment, the Due Process Clause of the Fifth Amendment, the Equal Protection Clause of the Fourteenth Amendment, the Privileges and Immunities provisions of Article IV and the Fourteenth Amendment, and the Petition Clause of the First Amendment.

*Valdez v. Roybal*, 186 F. Supp. 3d 1197, 1235 (D.N.M. 2016). To bring a claim for violation of this right, a plaintiff must show "that any denial or delay of access to the court prejudiced [him] in

---

[9] In addition, the Court notes that on October 19, 2022, Plaintiff stated under penalty of perjury that he "attempted to file classification appeals at all facilities." (Doc. 127 at 3.)

pursuing litigation." *Treff v. Galetka*, 74 F.3d 191, 194 (10th Cir. 1996). In other words, a plaintiff must demonstrate "actual injury." *Lewis v. Casey*, 518 U.S. 343, 349-50 (1996). Actual injury occurs, for example, when a claim is lost or rejected because of a state actor's misconduct or when the state actor's misconduct impedes a plaintiff's efforts to pursue a non-frivolous claim. *See id.* at 351, 353; *Simkins v. Bruce*, 406 F.3d 1239, 1244 (10th Cir. 2005); *Penrod v. Zavaras*, 94 F.3d 1399, 1403 (10th Cir. 1996). "Depriving someone of a frivolous claim," however, "deprives him of nothing at all, except perhaps the punishment of Federal Rule of Civil Procedure 11 sanctions." *Lewis*, 518 U.S. at 353 n.3.

Plaintiff alleges that Defendant Puente destroyed a "prepared" petition for writ of habeas corpus along with the supporting affidavit of alibi witness Candice Owens, that "there was no possible way Plaintiff could redo his habeas as it was," and that "it was impossible to find [Ms.] Owens again to get her to write another statement." (Doc. 19 at 5-6.) According to Plaintiff, Defendant Puente's actions therefore prevented him from successfully filing a habeas petition to challenge his state law conviction and violated his right of access to the courts. (*Id.* at 6.)

However, Plaintiff had already brought habeas petitions in state and federal court before the events forming the basis of the present action, in which he raised ineffective assistance of counsel based on his trial counsel's failure to pursue Ms. Owens' alibi testimony. *See Blake v. Janecka*, 624 F. App'x 640, 644–45 (10th Cir. 2015). With these petitions, he submitted a letter from Ms. Owens in which she claimed to have told Plaintiff's trial counsel that Plaintiff and his children were with her at a hotel on the night of the aggravated burglary forming the basis of Plaintiff's conviction, and that she had hotel receipts and photographs to prove it. *Id.* at 643-44.

Plaintiff first filed a *pro se* habeas petition with the state trial court. *Id.* at 644. The trial court denied his petition without an evidentiary hearing, finding that his trial counsel "had made a

'valid tactical decision' in choosing not to use [Ms.] Owens's testimony." *Id.* Plaintiff next filed a certiorari petition with the New Mexico Supreme Court, which was also denied. *Id.*

Plaintiff then filed a federal habeas petition under 28 U.S.C. § 2254, which this Court denied. *Blake v. Janecka*, No. 13-cv-454, 2014 WL 12796838 (D.N.M. Mar. 31, 2014). The Tenth Circuit affirmed, specifically discussing Plaintiff's ineffective assistance of counsel claim based on trial counsel's failure to pursue Ms. Owens' testimony. *Blake*, 624 F. App'x at 647. The Tenth Circuit found that Plaintiff could not show a reasonable probability that, absent counsel's alleged error, "his trial would have resulted in a favorable outcome." *Id.* The court explained that:

- The alibi to which Ms. Owens would have testified was "questionable" because it was one that Plaintiff purported not to know about "through all of his proceedings before his state habeas petition," yet it "would require that during the burglary … [Plaintiff] not be at home with his children (as he testified at trial) but instead that he be conveniently at a hotel with his mistress … , having brought his children along." As the Tenth Circuit observed, this would have been "a unique family-bonding experience that one would presumably remember when accused less than two days later of participating in a burglary that occurred on that same night";

- Plaintiff "had full opportunity to call [Ms.] Owens as a witness in his defense when he undertook his own representation following the state's first witness"[10]; and,

- The state presented "significant evidence" of Plaintiff's guilt at trial.

*Id.* The Tenth Circuit also found "well within [its] latitude" the trial court's post-conviction determination that Plaintiff's trial counsel had made a valid tactical decision not to pursue Ms. Owens' alibi testimony given the alibi's "dubious nature." *Id.* at 647 n.4.

Plaintiff argues that Defendant Puente's destruction of his legal papers prevented him from bringing a habeas petition claiming actual innocence based on Ms. Owens' affidavit. (Doc. 19 at

---

[10] Plaintiff was initially represented by counsel at his criminal trial, but after the state's first witness finished testifying, Plaintiff waived his right to counsel and represented himself. *Blake*, 624 F. App'x at 643. His former counsel remained as standby counsel. *Id.*

5.) But even if Plaintiff were able to bring this second or successive habeas petition,[11] the state trial court, this Court, and the Tenth Circuit have each already considered and rejected his alibi claim. *Blake*, 624 F. App'x at 644, 647 & n.4. And Plaintiff has presented no evidence or argument tending to show that the claim, if reasserted, would be anything other than frivolous. Plaintiff does argue that Ms. Owens' "[first] alibi statement was not recognized mainly due to it not being notarized," (Doc. 58 at 6; *see also* Doc. 81 at 2, 5); but in fact, as just discussed, the Tenth Circuit affirmed the lower courts' rejection of Plaintiff's alibi claim for reasons other than the unsworn nature of Ms. Owens' letter. Thus, Plaintiff has not shown a genuine issue of material fact regarding whether Defendant Puente's alleged destruction of his legal property caused him actual injury, and summary judgment should be granted in Defendant Puente's favor on Plaintiff's claim based on the constitutional right of access to the courts.[12]

   2.  *Plaintiff's First Amendment Retaliation Claims Against Defendants Puente and Beaird*

Plaintiff next claims that Defendants Puente and Beaird violated his First Amendment rights by destroying his property in retaliation for a previous lawsuit he filed against Defendant Beaird and prior grievances he filed against one or both Defendants. (Doc. 19 at 2-4; Doc. 58 at

---

[11] Because in his previous habeas petition Plaintiff argued that "he is factually innocent and … that his alibi witness' statement is new evidence that would rebut the jury's conviction," *Blake*, 2014 WL 12796838, at *3, he is barred under 28 U.S.C. § 2244(b)(1) from bringing this claim again in a second or successive federal habeas action. Additionally, under New Mexico law, state courts "have the discretion to … dismiss any claim raised and rejected in a prior [habeas] petition unless there has been an intervening change of law or fact or the ends of justice would otherwise be served by rehearing the claim." N.M. R. Crim. P. 5-802(*I*)(2); *see also Duncan v. Kerby*, 1993-NMSC-011, ¶ 5, 115 N.M. 344, 347 (1993) ("[T]he successive-writ petitioner is in a weaker position to argue that equity confers yet another postconviction opportunity to make his claim.").

[12] In his response to Defendants' *Martinez* Report, which is not sworn or submitted under penalty of perjury, Plaintiff argues that "the alibi affidavit document and argument was only a small portion of the habeas petition," and that Defendant Puente destroyed "many many documents," not "just that alibi[] testimony." (Doc. 70 at 1.) However, in his amended complaint, Plaintiff alleges that Ms. Owens' affidavit was "the heart of the habeas" petition, (Doc. 19 at 6); and, he has failed to present any plausible evidence or argument to show that any other claims in the missing petition were non-frivolous or that he could not replace any other documents Defendants allegedly destroyed.

12.) It is well settled that prison officials may not retaliate against an inmate because of the inmate's exercise of his First Amendment rights, including the filing of lawsuits and grievances. *Requena v. Roberts*, 893 F.3d 1195, 1211 (10th Cir. 2018); *Gee v. Pacheco*, 627 F.3d 1178, 1189 (10th Cir. 2010). "This principle applies even where the action taken in retaliation would be otherwise permissible." *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998).

However, to survive summary judgment on a retaliation claim, the inmate must present evidence "sufficient to support an inference by a fair-minded jury that [the] defendants took … action against him based at least in part on improper motives." *Smith v. Maschner*, 899 F.2d 940, 949 (10th Cir. 1990). And the Tenth Circuit has made clear that merely filing a grievance or lawsuit "does not establish the requisite causal connection for [an inmate's] retaliation claim." *Strope v. Cummings*, 381 F. App'x 878, 883 (10th Cir. 2010). This is because "litigious prisoners could claim retaliation over every perceived slight and resist summary judgment simply by pointing to their litigiousness." *Id.* Rather, an inmate must demonstrate "that the action was substantially motivated as a response to his exercise of constitutionally protected conduct," for example, by showing that the defendants "were aware of his protected activity, that his protected activity complained of [the d]efendants' actions, and that the [action] was in close temporal proximity to the protected activity." *Gee*, 627 F.3d at 1189 (quotation marks and brackets omitted).

Here, Plaintiff has not presented evidence sufficient to support the inference that Defendants Puente and Beaird destroyed his property in order to retaliate against him for the lawsuit and grievances he filed against them.[13] Rather, at most, Plaintiff makes a sworn but wholly

---

[13] Defendant Puente attested that Plaintiff "had never complained about [her] or filed any grievance against [her] prior to the time he alleges [she] destroyed his legal documents." (Doc. 48-7 at 2 ¶ 6.) Likewise, Defendant Beaird attested that he was not aware Plaintiff ever complained about him while at LCCF between February 2015 and September

conclusory accusation that the destruction of his property "was retaliatory for grievances filed on [Defendant Puente] in past."[14] (Doc. 1 at 8.) Plaintiff has not even presented evidence regarding when he filed the grievances for which Defendants Puente and Beaird allegedly retaliated against him. And though Defendant Beaird attested that he has "since learned" of a lawsuit Plaintiff filed against him and others in 2013, (Doc. 48-5 at 2 ¶ 5), a lawsuit filed in 2013 was not filed in "close temporal proximity" to Defendants' alleged destruction of Plaintiff's property in 2016 and thus does not, without more, support an inference of retaliatory motive. *See Gee*, 627 F.3d at 1189; *Smith*, 899 F.2d at 948. In short, Plaintiff's evidence of retaliatory motive is insufficient as a matter of law and summary judgment should therefore be granted in favor of Defendants Puente and Beaird on Plaintiff's First Amendment retaliation claims. *See Ellis v. J.R.'s Country Stores, Inc.*, 779 F.3d 1184, 1201 (10th Cir. 2015) (courts "do not consider conclusory and self-serving affidavits" on summary judgment).

### 3. *Plaintiff's Claim Against Defendant Puente for Destruction of Potentially Useful Evidence in Violation of Due Process*

Plaintiff also claims that, by destroying Ms. Owens' affidavit in support of his habeas petition, Defendant Puente violated his Fourteenth Amendment right to due process under *Arizona v. Youngblood*, 488 U.S. 51 (1988). *See id.* at 58 (finding that a bad-faith failure to preserve

---

2016, and "cannot recall if [Plaintiff] ever sued" him. (Doc. 48-5 at 2 ¶ 5.) He added that he has "since learned that a suit [Plaintiff] filed in 2013" against him "was not pursued by [Plaintiff] and was dismissed." (*Id.*)

[14] Plaintiff also makes unsworn allegations that Defendants destroyed his property to retaliate against him. (*See, e.g.*, Doc. 19 at 4-7; Doc. 58 at 12-13.) However, a plaintiff cannot rely on unsupported allegations to defeat a properly supported motion for summary judgment. *See White v. York Int'l Corp.*, 45 F.3d 357, 360 (10th Cir. 1995) ("In the face of a properly supported motion for summary judgment, the nonmoving party may not rely upon unsupported allegations without any significant probative evidence tending to support the complaint.") (quotation marks omitted); *Hall*, 935 F.2d at 1111 (prisoner's complaint "may … be treated as an affidavit *if* it alleges facts based on the plaintiff's personal knowledge *and has been sworn under penalty of perjury*") (emphasis added); *see generally* Fed. R. Civ. P. 56(c)(1)(A) (on summary judgment, party must support assertions by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations …, admissions, interrogatory answers, or other materials").

"potentially useful evidence" violates due process).[15] Under *Youngblood*, a state actor's destruction of potentially useful evidence violates due process when done in bad faith. *Id.* "The presence or absence of bad faith necessarily turns on the Government's knowledge of the evidence's potentially exculpatory value." *United States v. Beckstead*, 500 F.3d 1154, 1159 (10th Cir. 2007). Here, Plaintiff has presented no evidence to show that Defendant Puente knew Ms. Owens' affidavit was potentially exculpatory when she allegedly destroyed it along with "most of" Plaintiff's other property. (Doc. 19 at 5.)

In addition, as discussed in Section IV.B.1, *supra*, by the time Defendant Puente allegedly destroyed Ms. Owens' affidavit, state and federal courts had already considered and rejected the alibi defense Plaintiff claims the affidavit would have supported. *See Blake*, 624 F. App'x at 644, 647 & n.4. In these circumstances, the affidavit cannot be deemed potentially exculpatory, and Plaintiff cannot show that its destruction violated his right to due process under *Youngblood*. Because Plaintiff has not demonstrated that there is a genuine issue for trial on this claim, the Court recommends granting summary judgment in Defendant Puente's favor.

### C. Plaintiff's Eighth Amendment Claims against Defendants Smith, Beaird, GEO, and the Board

Finally, Plaintiff claims that Defendants Smith and Beaird violated his Eighth Amendment rights by transferring him from protective custody at LCCF to general population at PNM, which

---

[15] *Youngblood*, like *Brady v. Maryland*, 373 U.S. 83 (1963), is grounded in a criminal defendant's due process right to a fair trial. *See, e.g.*, *United States v. Bohl*, 25 F.3d 904, 906 (10th Cir. 1994) (noting that *Youngblood* sets out standards for "pretrial access to potentially exculpatory evidence"). As a pre-conviction trial right, it is unclear whether it applies in a post-conviction setting, and if so to what extent. *See Dist. Attorney's Off. for Third Jud. Dist. v. Osborne*, 557 U.S. 52, 68 (2009) ("The Court of Appeals went too far, however, in concluding that the Due Process Clause requires that certain familiar preconviction trial rights be extended to protect [the defendant's] postconviction liberty interest."); *see also McCarty v. Gilchrist*, 646 F.3d 1281, 1287 n.3 (10th Cir. 2011) (assuming without deciding that *Youngblood* applies in the postconviction context). However, because Plaintiff has not shown a violation of *Youngblood* at all, the Court need not determine whether it applies to his efforts to obtain post-conviction relief.

placed him at substantial risk of assault by other inmates. (Doc. 19 at 1-2.) Plaintiff further claims that Defendants GEO and the Board had an unconstitutional policy of placing protective custody inmates in general population in the DSP. (*Id.*)

### 1.   *Plaintiff's Eighth Amendment Claims Against Defendants Smith and Beaird*

Plaintiff claims that Defendants Smith and Beaird were deliberately indifferent to his health and safety in violation of the Eighth Amendment because they knew he would be at substantial risk of assault by other inmates if he were placed in general population and nevertheless transferred him to "D.S.P. in general population." (Doc. 19 at 2.) Plaintiff further claims that Defendants' actions caused him to be assaulted at GCCF and SNMCF, where he was transferred after completing the DSP at PNM. (*Id.* at 2-3.)

### a.   Plaintiff's Eighth Amendment Claims against Defendants Smith and Beaird Based on His Transfer to the DSP

Plaintiff first claims that Defendants Smith and Beaird violated his Eighth Amendment rights by transferring him from protective custody at LCCF to the DSP at PNM. (Doc. 19 at 1-4.) To bring a claim for deliberate indifference under the Eighth Amendment, an inmate must show that he was "incarcerated under conditions posing a substantial risk of serious harm" and that prison officials were aware of the risk but disregarded it. *Farmer v. Brennan*, 511 U.S. 825, 834, 837 (1994); *Perkins v. Kansas Dep't of Corrections*, 165 F.3d 803, 809 (10th Cir. 1999). Showing a substantial risk of serious harm requires "more than a conclusory claim of being afraid and aggravated." *Riddle v. Mondragon*, 83 F.3d 1197, 1205 (10th Cir. 1996). Instead, an inmate must show "a deprivation that is, objectively, sufficiently serious" based on specific circumstances. *Id.* at 1205-06.

Here, Plaintiff has not demonstrated a genuine issue of material fact regarding whether he was at substantial risk of serious harm while housed in the DSP at PNM. Plaintiff alleges that he

"was threatened while at the D.S.P program" and "lived in fear the entire time." (Doc. 81 at 4.) But he admits that the DSP "was [on] lockdown status most of the time," "due to lockdowns, assaults were rare," and he was never physically assaulted during his time at PNM. (*Id.*) Additionally, in a letter he attached to his response to Defendants' *Martinez* Report, he admits that while in the DSP he "had access to only 11 other inmates in very security tight conditions." (Doc. 58-1 at 9.) These admissions demonstrate that, as a matter of law, any risk to which Plaintiff was exposed due to his transfer to the DSP was not objectively sufficiently serious to violate the Eighth Amendment.[16]

Nor can the Court find a genuine issue of material fact based on Plaintiff's broad, conclusory averments that any inmate who has been in protective custody is thereafter perpetually at substantial risk of assault or death in any general population setting. (*See, e.g.*, Doc. 60 at 1 ¶¶ 2-3.) Even assuming such an averment could ever defeat summary judgment, here, Plaintiff's more specific admissions regarding his actual conditions of confinement at PNM preclude such an outcome. Rather, the undisputed facts show that Plaintiff was not at substantial risk of serious harm while in the DSP, notwithstanding his former placement in protective custody at LCCF.

In addition, Plaintiff has failed to show a genuine issue of material fact regarding whether Defendants Smith and Beaird knew that transferring him to the DSP would pose a substantial risk of serious harm.

---

[16] This is not to suggest that suffering a physical assault is always required to sustain an Eighth Amendment deliberate indifference claim. For example, in *Benefield v. McDowall*, the Tenth Circuit held that the plaintiff sufficiently alleged an Eighth Amendment violation where a prison official allegedly circulated rumors that the plaintiff was a snitch and showed other inmates a letter the plaintiff wrote giving information to prison officials, causing the plaintiff to fear attacks and even death, because "the Eighth Amendment may be implicated not only [by] physical injury, but also by the infliction of psychological harm." 241 F.3d 1267, 1270, 1272 (10th Cir. 2001). Nevertheless, whether a physical attack has occurred is one factor the Tenth Circuit has considered in reviewing whether an inmate has demonstrated an objectively sufficiently serious deprivation under the Eighth Amendment. *See Riddle*, 83 F.3d at 1205-06.

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, *and he must also draw the inference.*

*Wilson v. Falk*, 877 F.3d 1204, 1209–10 (10th Cir. 2017) (emphasis in original) (quoting *Farmer*, 511 U.S. at 837). "An official's failure to alleviate a significant risk of which he was unaware, no matter how obvious the risk or how gross his negligence in failing to perceive it, is not an infliction of punishment and therefore not a constitutional violation." *Tafoya v. Salazar*, 516 F.3d 912, 916 (10th Cir. 2008).

In the present matter, Plaintiff attested that "[i]t is common knowledge among N.M.C.D. staff and administration that if you are or become a [protective custody] inmate, you risk assault or death if you go into … general population … after that point[.]" (Doc. 60 at 1 ¶ 3; *see also* Doc. 58 at 11 (arguing that "it is common knowledge to *all* inmates and staff that [if] a known protective custody inmate hits general population, he will be assaulted or killed") (emphasis in original).) Plaintiff further attested that "LCCF knew full well that the [DSP] was a general population program."[17] (Doc. 120 at 3.)

However, Defendant Beaird attested that he "personally did not and to this day do[es] not know if the [DSP] is administered in a general population type of setting." (Doc. 48-5 at 2 ¶ 3.)

---

[17] Plaintiff also asserts that he "can provide 10-20 witness testimony from inmates as well as staff that will say it's a known fact that P.C. inmates are assaulted, stabbed, killed by general population inmates as soon as they find out an inmate was P.C.," and that the DSP "was shut down due to the problem of PC and GP being mixed and resulting in multiple assaults." (Doc. 120 at 3.) However, Plaintiff does not identify any of the inmates or staff who would testify as he claims, the bases of these individuals' knowledge, or why he has not presented their affidavits; and, he does not indicate how he has personal knowledge regarding why (or indeed if) the DSP was shut down, nor is the basis of his knowledge apparent. *See Ellis*, 779 F.3d at 1201 (to defeat summary judgment, "[i]nformation presented in the nonmovant's affidavit must be based on personal knowledge") (quotation marks omitted); Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion [for summary judgment] must be made on personal knowledge.").

Furthermore, while the NMCD's policy regarding the DSP states that the program is held in a "close custody General Population setting," it also states that inmates in the program are "separate[d] … from other general population inmates" and are not "released to the general population setting" until "successful completion of [the] DSP." (Doc. 48-3 at 1, 5.) Thus, even if the Court were to presume that Defendants Smith and Beaird were familiar with the NMCD's policy regarding the DSP—despite undisputed evidence that there was no DSP at LCCF at the relevant time, (Doc. 48-3 at 2; Doc. 48-5 at 1 ¶ 3)—Plaintiff has not shown a genuine issue of material fact regarding whether Defendants knew that placing him in the DSP would expose him to the same risks that other general population settings may have presented.

Plaintiff has also not shown a genuine issue of material fact regarding whether Defendants Smith and Beaird knew of any more particularized risk to Plaintiff at PNM. Defendant Beaird attested that "no enemy identified by [Plaintiff] was located" at PNM when he was transferred to the DSP, and Plaintiff admits "this may be true."[18] (Doc. 48-5 at 2 ¶ 3; Doc. 58 at 11.) And, Plaintiff has presented no evidence to support the inference that Defendants knew PNM would be unable to protect him from any risks he faced while in the DSP. *Cf. Chavez v. Perry*, 142 F. App'x 325, 333 (10th Cir. 2005) ("[A]n Eighth Amendment claim could be made out on evidence showing that officials transferred a protective custody inmate to a facility knowing that the inmate could not be protected there.").

Furthermore, Defendant Beaird attested that neither he "nor anyone else at LCCF know about or have any input in or control over classification and housing decisions made at other

---

[18] Plaintiff contends that even if none of his identified enemies were at PNM, he had "made aware to security that the white suprema[c]ist inmates had a hit on me." (Doc. 58 at 11.) But Plaintiff has not presented any evidence to show that Defendants knew of any inmates in the DSP who "had a hit on" him when he was placed in the program.

facilities," and that "matters such as a need for protection from others [at other facilities] are between [Plaintiff] and staff at those other facilities and handled according to NMCD policy and procedure." (Doc. 48-5 at 2 ¶ 4.) There is no cognizable evidence in the record refuting this sworn statement,[19] nor is there any evidence to show that Defendants knew PNM staff would not follow NMCD policies or would manage Plaintiff's security needs in a way that would place him at substantial risk of serious harm. For the foregoing reasons, Plaintiff has failed to present evidence that would allow a fair-minded jury to find that Defendants Smith and Beaird placed him at substantial risk of serious harm by transferring him to the DSP or that Defendants were deliberately indifferent to such a risk. Summary judgment should therefore be granted in favor of Defendants Smith and Beaird on Plaintiff's Eighth Amendment claims based on his transfer to the DSP.

  b.  Plaintiff's Eighth Amendment Claims Against Defendants Smith and
      Beaird Based on Assaults at GCCF and SNMCF

Plaintiff also claims that Defendants Smith and Beaird violated his Eighth Amendment rights by causing him to be placed in general population at GCCF and SNMCF, where he was physically attacked. (Doc. 19 at 2-3.) However, to prove a claim under 42 U.S.C. § 1983, a plaintiff must show that the defendant proximately caused the asserted constitutional violation. *Beedle v. Wilson*, 422 F.3d 1059, 1064 (10th Cir. 2005); *Summum v. City of Ogden*, 297 F.3d 995, 1000 (10th Cir. 2002), *abrogated on other grounds by Pleasant Grove City, Utah v. Summum*, 555 U.S. 460, 466–67 (2009). And Plaintiff has neither alleged nor submitted any evidence to show that Defendants Smith and Beaird played a role in his transfer from PNM to GCCF and SNMCF. Additionally, Plaintiff has presented no evidence to show that Defendants Smith and Beaird caused

---

[19] Plaintiff calls Defendant Beaird's sworn statement on this point "unbelievably untrue." (Doc. 58 at 11.) However, NMCD policies in effect at the relevant time clearly (and logically) show that prison officials had input and control over classification and housing decisions at their own institution, but not at any others. (Docs. 39-2, 39-3, 39-5.)

him to be placed in general population at GCCF or SNMCF, which is the reason Plaintiff alleges

he was at substantial risk of assault by other inmates at these facilities.[20] (Doc. 19 at 1-2.)

Under the NMCD's classification policies, each prison facility has its own Classification

Officer, Classification Supervisor, and Classification Committee. (*See* Doc. 39-2 at 3.) Each

facility also holds its own "Institutional Reclassification Reviews" at regular, prescribed intervals,

and resolves its own "Institutional Classification Appeals." (Doc. 39-3 at 8–11, 17–18.) Likewise,

under the NMCD's Protective Custody Procedure policy, each facility handles its own protective

custody investigations and placements, which must be approved by the facility's Warden. (Doc.

39-5 at 2.) Consistent with these policies, Dwayne Santistevan, LCCF's Warden in September

2020, attested:

> LCCF personnel would not have had any involvement whatsoever in, and could not
> and did not know about let alone control []or make any decisions respecting
> housing, classification or other matters pertaining to conditions of confinement of
> inmates, including [Plaintiff], located at other prison facilities in the NMCD prison
> system.

(Doc. 48-1 at 2-3 ¶ 6; *cf.* Doc. 39-1 at 2 ¶ 6.)

Plaintiff has presented no evidence to the contrary. Indeed, in a letter attached to Plaintiff's

response to the *Martinez* Report, Plaintiff wrote that after he was transferred to GCCF, he

discussed his safety concerns with "the security team" there and presented them at a classification

committee hearing. (Doc. 58-1 at 9-10.) Plaintiff has also conceded that his injuries at GCCF and

SNMCF occurred after he was "out of L.C.C.F. control." (Doc. 58 at 9.) Because a reasonable

factfinder could not conclude that Defendants Smith and Beaird proximately caused Plaintiff's

---

[20] Plaintiff argues that he was placed in general population at GCCF and SNMCF because Defendants transferred him
to the DSP at PNM and prevented him from appearing at a classification hearing at LCCF on the day of his transfer.
(*See* Doc. 19 at 1-2; Doc. 81 at 4.) But Plaintiff has failed to present any evidence to show that these actions had any
effect on his conditions of confinement at GCCF or SNMCF.

transfer from the DSP at PNM to general population at GCCF and SNMCF, summary judgment should be granted in favor of these Defendants on Plaintiff's Eighth Amendment claims arising out of the assaults he allegedly suffered at these facilities.

### 2.   Plaintiff's Monell Claims Against Defendants GEO and the Board

Plaintiff also brings claims against Defendants GEO and the Board under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), alleging that these entities maintained an unconstitutional policy of placing protective custody inmates in general population in the DSP. (Doc. 19 at 1.) To bring a Section 1983 claim against a county or a private entity acting under color of state law, a plaintiff must show that the entity "directly caused the constitutional violation" by instituting a policy "that was the direct cause or moving force behind the constitutional violation[]." *Smedley v. Corr. Corp. of Am.*, 175 F. App'x 943, 946 (10th Cir. 2005) (quotation marks omitted). Thus, the entity may be "held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the [entity]." *Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 403–04 (1997).

In support of his *Monell* claims against Defendants GEO and the Board, Plaintiff argues that the DSP "is [the] policy [GEO] or [the Board] had in place that is in violation of Plaintiff's … Eighth Amendment right." (Doc. 58 at 15.) But the undisputed evidence shows that the DSP "is the policy of the [NMCD]," (Doc. 48-3 at 1), not of GEO or the Board. Nor has Plaintiff presented any evidence that GEO or the Board instituted any other policy that was the "direct cause" or "moving force" behind the constitutional violations Plaintiff alleges. *Smedley*, 175 F. App'x at 946.

This Court has already proposed to find that summary judgment should be granted in the Board's favor on Plaintiff's *Monell* claims against it "[b]ecause the DSP that Plaintiff challenges is a policy promulgated by the NMCD" and "there is no record evidence to establish that [the Board] instituted any policy that was the direct cause or moving force behind the constitutional violations Plaintiff alleges." (Doc. 109 at 4-5 (quotation marks and brackets omitted).) Likewise, because GEO did not promulgate the challenged policy and there is no evidence that any of its policies were the direct cause or moving force behind the alleged constitutional violations, summary judgment should be granted in GEO's favor on Plaintiff's *Monell* claims against it.

In addition, a Section 1983 claim against a county or private entity acting under color of state law "cannot survive a determination that there has been no constitutional violation." *Crowson v. Washington Cnty. Utah*, 983 F.3d 1166, 1186 (10th Cir. 2020), *cert. denied sub nom. Washington Cnty. v. Crowson*, 142 S. Ct. 224 (2021); *see also Livsey v. Salt Lake Cnty.*, 275 F.3d 952, 958 (10th Cir. 2001) (an entity "may not be held liable for the actions of its employees if those actions do not constitute a violation of a plaintiff's constitutional rights"). Here, as discussed in Section IV.C.1., *supra*, Plaintiff has failed to demonstrate a genuine issue of material fact regarding whether Defendants Smith and Beaird violated his Eighth Amendment rights. As such, Defendants GEO and the Board are entitled to summary judgment on Plaintiff's Eighth Amendment claims as well.

### D.  Plaintiff's Motions to Take Discovery

In his Motion to Seek Leave to Take Specific Non-Duplicative Discovery (Doc. 120), which was submitted under penalty of perjury, and his Motion for Continuance and Extension to Allow Plaintiff [to] File and Submit Facts That Will Show or Create Genuine Issue[s] of Material Fact (Doc. 129), Plaintiff seeks to obtain:  (1) an affidavit from "[Defendant] Beaird's wife

employed at LCCF" regarding the "conditions of [Plaintiff's] legal documents" when they were returned to him in segregation; (2) an affidavit from Defendant Smith regarding Defendant Puente's alleged subsequent "remov[al] from property"; (3) affidavits "of a few inmates and officers" regarding "the known danger" to protective custody inmates returned to general population; (4) "log books from segregation" at LCCF from September 1 to 4, 2016; (5) "camera footage" at LCCF from September 1 and 2, 2016; (6) "names of segregation [sergeants]" at LCCF from August 1 to September 12, 2016; (7) "names of inmates on either side of [Plaintiff]" at LCCF; (8) "camera footage and documents on assaults" at other institutions; (9) "names of Classification Committee held [at LCCF] in [his] absence" and "affidavits from those individuals"; (10) testimony from "PNM['s] Grievance Officer" regarding Plaintiff's "attempts to file with LCCF"; (11) "grievance logs beginning" September 1, 2016; (12) "affidavits from attorneys Plaintiff attempted to contact, explained issues"; (13) "grievance logs for all inmates who filed on [Defendant] Puente about destruction of legal documents" and affidavits from these inmates; and, (14) "grievance logs on all inmates" transferred from protective custody to general population who "filed on assault." (Doc. 120 at 4-5; Doc. 129 at 2-4.)

The Court construes Plaintiff's motions as motions for relief under Federal Rule of Civil Procedure 56(d), which provides that

> [i]f a nonmovant shows by affidavit or declaration[21] that, for specified reasons, it cannot present facts essential to justify its opposition [to a summary judgment motion], the court may:  (1) defer considering the motion or deny it; (2) allow time

---

[21] Although Rule 56 does not require "formal affidavit[s]," in order to substitute for an affidavit an "unsworn declaration, certificate, verification, or statement" must be "subscribed in proper form as true under penalty of perjury." Fed. R. Civ. P. 56(c), Advisory Committee Notes to 2010 amendments. Plaintiff's first motion for discovery is subscribed as true under penalty of perjury, and though the second is not, it merely seeks a subset of the same discovery. (Docs. 120, 129.) Thus, read together, the motions satisfy Rule 56(d)'s requirement for an "affidavit or declaration." Fed. R. Civ. P. 56(d).

to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order.

Fed. R. Civ. P. 56(d). A Rule 56(d) affidavit or declaration must identify:

(1) the probable facts not available, (2) why those facts cannot be presented currently, (3) what steps have been taken to obtain these facts, and (4) how additional time will enable the party to obtain those facts and rebut the motion for summary judgment.

*Valley Forge Ins. Co. v. Health Care Mgmt. Partners, Ltd.*, 616 F.3d 1086, 1096 (10th Cir. 2010) (quotation marks and brackets omitted).

Plaintiff's motions fail to satisfy these requirements. In light of the Court's rejection of Defendants' arguments regarding exhaustion of administrative remedies in Section IV.A., *supra*, items ten through twelve are not "essential to justify [Plaintiff's] opposition" to Defendants' motion. Fed. R. Civ. P. 56(d). Also inessential are items one, two, four through seven, and thirteen, because Plaintiff appears to seek these items to rebut evidence regarding the alleged destruction of Plaintiff's property on which the Court has not relied in recommending that summary judgment be granted. Even if these items were to show what Plaintiff says they would show, the Court's recommendation in Section IV.B., *supra*, regarding Plaintiff's destruction of property claims would not change. The same reasoning applies to items eight and nine, which Plaintiff appears to seek in support of his claims under the Eighth Amendment; in particular, the analysis in Section IV.C.1.b., *supra*, renders evidence documenting Plaintiff's alleged assaults at GCCF and SNMCF irrelevant to these claims.

Finally, items three and fourteen would be too broad and general to assist Plaintiff in opposing Defendants' summary judgment motion. As discussed in Section IV.C.1, *supra*, Defendants Smith and Beaird did not transfer Plaintiff from protective custody to a generic "general population" setting. Rather, they transferred him to the DSP, where inmates were

"separate[d] … from other general population inmates," Plaintiff "had access to only 11 other inmates in very security tight conditions," and assaults were "rare." (Doc. 48-3 at 1; Doc. 58-1 at 9; Doc. 81 at 4.) Thus, neither the grievances filed by other inmates transferred from protective custody to general population nor the affidavits of "a few inmates and officers" regarding the "known risk to protective custody inmates transferred to general population" would pertain to Plaintiff's situation. Also, Plaintiff has not explained why he could not obtain and present the specified affidavits without the Court's intervention. *Valley Forge Ins. Co.*, 616 F.3d at 1096. The Court therefore recommends denial of Plaintiff's Motion to Seek Leave to Take Specific Non-Duplicative Discovery (Doc. 120) and Motion for Continuance and Extension to Allow Plaintiff [to] File and Submit Facts That Will Show or Create Genuine Issue[s] of Material Fact (Doc. 129).

### E.  Plaintiff's Motions for Injunctive Relief

Finally, the Court recommends denial of Plaintiff's three most recent motions for injunctive relief, *i.e.*, Plaintiff's Motion for Injunctive Relief (Doc. 119), Plaintiff's Motion for Court Ordered Injunction (Doc. 126), and Plaintiff's Motion to Amend Injunction Filed – Motion to Supplement Additional Information and Facts as They Occur (Doc. 130).

Plaintiff's first motion includes three distinct requests. First, as its title indicates, it includes a request for injunctive relief. (Doc. 119 at 3.) This request should be denied as moot because it concerns Plaintiff's conditions of confinement at SNMCF, where Plaintiff is no longer housed. (Docs. 119, 124); *see Green v. Branson*, 108 F.3d 1296, 1299-1300 (10th Cir. 1997) (prisoner's claim for injunctive relief against state prison officials was moot where prisoner had been transferred from state to federal custody and then released, because "the entry of injunctive relief in [the plaintiff's] favor would have no effect on the defendants' behavior").

Second, the motion includes a request for appointment of counsel. (Doc. 119 at 3.) This request should be denied as well, for the reasons stated in the Court's Order Denying Motion for Appointment of Counsel (Doc. 113), filed March 18, 2022. Plaintiff has not shown that the relevant circumstances changed materially from entry of the Court's order to the filing of his motion.

Finally, the motion includes a request for leave to amend to add claims based on the conditions of Plaintiff's confinement at GCCF and SNMCF. (Doc. 119 at 3-4.) A motion to amend under Federal Rule of Civil Procedure 15 may be denied, *inter alia*, on the basis of undue delay or undue prejudice to the opposing party. *Duncan v. Manager, Dep't of Safety, City & Cnty. of Denver,* 397 F.3d 1300, 1315 (10th Cir. 2005). Regarding delay, the Tenth Circuit has stated that

> [c]ourts will properly deny a motion to amend when it appears that the plaintiff is [seeking amendment] to make the complaint a moving target, to salvage a lost case by untimely suggestion of new theories of recovery, to present theories seriatim in an effort to avoid dismissal, or to knowingly delay raising an issue until the eve of trial.

*Minter v. Prime Equip. Co*., 451 F.3d 1196, 1206 (10th Cir. 2006) (quotation marks, citations, and brackets omitted).

Moreover, according to the Tenth Circuit, the "most important[] factor in deciding a motion to amend the pleadings[] is whether the amendment would prejudice the nonmoving party." *Id.* at 1207.

> Courts typically find prejudice only when the amendment unfairly affects the defendants in terms of preparing their defense to the amendment. Most often, this occurs when the amended claims arise out of a subject matter different from what was set forth in the complaint and raise significant new factual issues.

*Id.* at 1208 (quotation marks and citation omitted).

Here, Plaintiff seeks leave to add claims that raise new factual issues and arise out of a subject matter distinct from the subject matter in his original and amended complaints. In addition, Plaintiff sought leave to amend fully five years after he initiated this action, by which time

Defendants had filed a *Martinez* Report and a motion for summary judgment, and the report and motion had been fully briefed. It thus "appears that [P]laintiff is [seeking amendment] to make the complaint a moving target, to salvage a lost case by untimely suggestion of new theories of recovery, [or] to present theories seriatim in an effort to avoid dismissal." *Id.* at 1206. For these reasons, Plaintiff's request for leave to amend is untimely and unduly prejudicial and should be denied.

Plaintiff's second and third motions for injunctive relief are likewise without merit. In these motions, Plaintiff seeks injunctive relief regarding the conditions of his confinement at LCCF after he returned there on or about October 3, 2022. (Docs. 126, 130.) In particular, he asks the Court to order Defendants to remove him from general population at this facility and place him in "safe housing." (Doc. 126 at 2-3; Doc. 130 at 11.) However, Plaintiff admits that he is currently in disciplinary segregation at LCCF, and he has neither alleged nor presented evidence that this placement poses a substantial risk of assault by other inmates in violation of the Eighth Amendment. (Doc. 126 at 1; Doc. 130 at 8.) As such, Plaintiff has failed to allege or prove that he has suffered an irreparable injury or that remedies available at law would be inadequate to compensate him for any injuries he has suffered, as required to demonstrate entitlement to permanent injunctive relief. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

Plaintiff also seeks to add new claims in these two motions. (Docs. 126, 130.) The proposed new claims concern a host of new alleged circumstances, including fabricated disciplinary charges, lack of access to legal resources, materials, and assistance, withholding of legal documents regarding a potential tort claim against Northeastern New Mexico Correctional Facility, lack of access to religious materials, "cruel and unusual" transport conditions, and lack of access to grievance procedures to exhaust administrative remedies with respect to the foregoing matters.

(Doc. 126 at 1-3; Doc. 130 at 1-12.) However, as with Plaintiff's proposed amendment regarding the conditions of his confinement at GCCF and SNMCF, the Court should deny Plaintiff leave to amend to add these claims because they are untimely and unduly prejudicial given their substantially different subject matter and the late stage of this litigation. *Minter*, 451 F.3d at 1206-08; *Duncan,* 397 F.3d at 1315.

## V.   CONCLUSION

For the reasons stated above, the Court recommends that:

1.   Defendants' Motion for Summary Judgment (Doc. 75) be GRANTED; and,

2.   Plaintiff's Motion for Summary Judgment or Motion for Mediation and Arbitration (Doc. 78), Motion for Injunctive Relief (Doc. 119), Motion to Seek Leave to Take Specific Non-Duplicative Discovery (Doc. 120), Motion for Court Ordered Injunction (Doc. 126), Motion for Continuance and Extension to Allow Plaintiff [to] File and Submit Facts That Will Show or Create Genuine Issue[s] of Material Fact (Doc. 129), and Motion to Amend Injunction Filed – Motion to Supplement Additional Information and Facts as They Occur (Doc. 130) be DENIED.

**THE PARTIES ARE NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

_____
KIRTAN KHALSA
UNITED STATES MAGISTRATE JUDGE